IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 07-00384 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| REX T. HARRISON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT REX T. HARRISON'S MOTION
TO DISMISS COUNT 3

On May 8, 2008, the Court heard Defendant's Motion to Dismiss Count 3.  Special Assistant U.S. Attorney Kerry L. Abramson appeared at the hearing on behalf of the Government; Federal Public Defender Peter C. Wolff, Jr. appeared at the hearing on behalf of Defendant.  After reviewing Defendant's motion and the supporting and opposing memoranda, the Court GRANTS Defendant's Motion to Dismiss Count 3.

BACKGROUND

On November 29, 2007, a jury convicted Defendant of two counts of Assault on a Federal Officer in violation 18 U.S.C. §§ 11(a)(1) and (b) (Counts 1 and 2 of the Indictment) and one count of First Degree Terroristic Threatening

Case 1:07-cr-00384-DAE   Document 103   Filed 05/13/08   Page 2 of 11   PageID #: 1282

against a Public Servant in violation of Hawai`i Revised Statutes ("HRS") § 707-716(1)(c), a federal offense pursuant to 18 U.S.C. §§ (7)(c) and 13 (Count 3 of the Indictment). Defendant was immediately remanded to the custody of the U.S. Marshals Service pending sentencing.

On April 22, 2008, Defendant, through his new counsel, Federal Public Defender Peter C. Wolff, Jr., filed the instant Motion to Dismiss Count 3 ("Motion to Dismiss") (Doc. # 87) for lack of subject matter jurisdiction. The Government opposed Defendant's motion on May 2, 2008 (Doc. # 94). On May 6, 2008, the Government filed a reply (Doc. # 95).

STANDARD OF REVIEW

Federal Rule of Criminal Procedure ("Rules") 12(b)(3)(B) states that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." See also United States v. Arbo, 691 F.2d 862, 865 (9th Cir. 1982) ("[l]ack of subject matter jurisdiction may be raised at any time"). Such a claim may be raised at any time because "defects in [the court's] subject matter jurisdiction go to the inherent power of the court and cannot be waived or forfeited." United States v. Jacobo Castillo, 496 F.3d 947, 952 (9th Cir. 2007).

Where a party initially raises fundamental defects in an indictment after a jury trial, however, "[the indictment] . . . is to be upheld on appeal if the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." United States v. Pheaster, 544 F.2d 353, 361 (9th Cir. 1976) (quotations and citations omitted). The limited resources of the judicial system require that post-conviction challenges to indictments be made at the earliest possible moment in order to avoid needless waste. Id. Consequently, although such defects are never waived, "indictments which are tardily challenged are liberally construed in favor of validity." Id.

## DISCUSSION

Defendant argues that dismissal of Count 3 is warranted because this Court did not have subject matter jurisdiction over the charge. Specifically, Defendant contends that Hawaii's Terroristic Threatening in the First Degree statute, HRS §707-716(1)(c), by way of 18 U.S.C. § 13(a) of the Assimilated Crimes Act ("ACA"),[1] fails to bestow subject matter jurisdiction on this Court because "public servant" as employed by § 707-716(1)(c) does not include military

---

[1] The ACA adopts state criminal laws, making them applicable in federal enclaves, such as military bases, if there is no federal criminal law prohibiting the conduct that the state criminal law prohibits. Count 3 invokes the ACA in order to vest this Court with subject matter jurisdiction over a violation of HRS § 707-716(1)(c).

police officers ("MP").² Other than noting that the term "public servant" includes, but is not limited to, an "educational worker," HRS § 707-716 does not define the term. Instead, as Defendant correctly points out, Hawai`i courts have recognized that "public servant" as used in HRS § 707-716 carries the meaning that the term is given in HRS § 710-1000(15). See State v. Nichols, 141 P.3d 974, 988 (Haw. 2006); State v. Kuhia, 96 P.3d 590, 598-99 (Haw. App. 2004). HRS § 710-1000(15), in turn, defines "public servant" as: "[1] any officer or employee of any branch of government, whether elected, appointed, or otherwise employed, and [2] any person participating as advisor, consultant, or otherwise, in performing a governmental function, but [3] the term does not include jurors or witnesses[.]" (numbering and emphasis added).

        The crux of Defendant's argument is that "government," as used in the first clause of the definition of "public servant," denotes only the government of the State of Hawai`i. Indeed, HRS § 710-1000(5) defines "government" as: "any branch, subdivision, or agency of the government of this State or any locality within it[.]" Thus, Defendant's argument goes, "public servant," for purposes of HRS § 710-1000(15) and, by extension, § 707-716, does not mean any officer or

---

² Defendant was charged in Count 3 with threatening, by word and conduct, to cause bodily injury to Travis Jenkins and Amber Marie Kirby who were, at the time, engaged in the performance of their official duties as MPs.

employee of <u>any</u> branch of <u>any</u> government but, rather, means only an officer or employee of the government of the State of Hawai`i. Accordingly, threatening a federal employee, in this case two U.S. Army MPs, is not an act for which Defendant could be convicted under HRS § 707-716(1)(c). That being so, Defendant's commission of such an act is not an offense over which this Court has subject matter jurisdiction pursuant to the ACA. As such, Defendant argues that Count 3 should be dismissed.

The Government counters that the Court had jurisdiction over Count 3 because the MPs were "public servants" under HRS §707-716. The Government makes three arguments in support of this proposition. First, the Government contends that Defendant's interpretation of the disputed statutory language is erroneous because the definition of "law enforcement officer" contained in HRS § 710-1000(13), including a law enforcement officer employed by the United States, is a "public servant." HRS § 710-1000(13) reads in pertinent part:

> 'Law enforcement officer' means any public servant, whether employed by the State or subdivisions thereof or by the United States, vested by law with a duty to maintain public order or, to make arrests for offenses or to enforce the criminal laws, whether that duty extends to all offenses or is limited to a specific class of offenses[.]

As an MP is a law enforcement officer, the Government's argument goes, so too is an MP a public servant.  Thus, because Defendant's threats for which he was convicted under Count 3 were made against two MPs, the Court has jurisdiction over the charge.

Second, the Government asserts that Defendant's interpretation of the statutory language is incorrect.  The Government argues that the entities listed under the term "government," as defined by HRS § 710-1000(5), are not intended to be an exhaustive or exclusive list.  Rather, the definition of "government" is modified by the term "includes," which is a word of enlargement, meaning that the statute should not be interpreted to exclude employees or officers of the United States.  On the contrary, argues the Government, the definition should be read expansively to include not only officers of State government, but officers of the United States government as well.

Third, the Government contends that, even if the Court agrees with Defendant's argument that "public servant" as defined by HRS § 710-1000(15) only encompasses those employed by the "government" of the State of Hawai`i, the Court still has jurisdiction over Count 3 because of the second clause of the "public servant" definition.  Specifically, the Government avers that "public servant" additionally means: "any person participating as advisor, consultant, or

otherwise, in performing a governmental function." HRS § 710-1000(15). The term "governmental function" is defined as: "any activity which a public servant is legally authorized to undertake on behalf of the government[.]" HRS § 710-1000(6). In essence, the Government contends that the MPs here were performing a lawful governmental function and therefore fall within the "public servant" definition, regardless of whether the first clause of that definition, as modified by the definition of "government" as discussed above, implicates the MPs in their professional capacities.

Initially, the Court notes that there does not appear to be any Hawai`i case law directly on point as to whether "public servant" includes federal officers or employees for purposes of HRS § 707-716. As such, this appears to be a matter of first impression. Nor have the parties directed the Court's attention to any relevant legislative history to clarify the Hawai`i legislature's intent with regard to this issue.

"Statutory definitions control the meaning of statutory words." Burgess v. United States, 128 S. Ct. 1572, 1577 (2008) (internal quotation and citation omitted). When a statute includes an explicit definition, the court should follow that definition even if it varies from that term's ordinary meaning. Stenberg v. Carhart, 530 U.S. 914, 942 (2000) (citing Meese v. Keene, 481 U.S. 465, 484-85

(1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term"); Colautti v. Franklin, 439 U.S. 379, 392-93, n. 10 (1979) ("As a rule, a definition which declares what a term 'means' . . . excludes any meaning that is not stated") (internal quotation omitted).

While the Court finds that both parties raise credible arguments, the Court finds Defendant's more compelling.[3]  Simply put, the most logical and straightforward application of the relevant statutory language leads to the conclusion that an MP is not a "public servant" for purposes of the HRS § 707-716.  Tracking the explicit language from HRS § 707-716 to HRS § 710-1000 as directed by Hawai`i's appellate courts, the Court finds that a "public servant" is one who works for the "government" of the State of Hawai`i.  While it is possible to arrive at the result suggested by the Government, doing so requires significantly more interpretive steps and inferences.

For example, the Government's assertion that HRS § 710-1000(13)'s definition of "law enforcement officer" provides relevant guidance here requires the Court to look beyond the plain language used to define the essential terms and to infer a meaning of "public servant" that is not clear on the face of the statute.

---

[3] The Court, as indicated at the hearing, disagrees with Defendant that the Hawai`i legislature explicitly contemplated, and consciously decided not to include, federal officers and employees within the definition of "public servant."

Furthermore, the Government's reference to the "law enforcement officer" definition effectively undermines its own argument – if the Hawai`i legislature was able to specify for purposes of this definition that the application of the term extended to law enforcement officers of both State and Federal designation, then certainly the legislature could have imposed similar specificity on the definition of "public servant."  The fact that the legislature did not do so weighs against the position advocated by the Government here.

Likewise, the Government's argument that the word "includes" within the definition of "government" should be read to de-limit the scope of the term is unpersuasive.  While it is true that "includes" is commonly used as a term of expansion, to so expand the meaning of "government" here would require an assumptive leap – namely, that the Hawai`i legislature intended, despite the clear subsequent language to the contrary, to include the Federal Government in a definition that, on its face, only mentions the State.  Finally, the Government's attempt to invoke the second clause of the "public servant" definition is unavailing. While the Court recognizes that an MP has the authority to enforce State laws on properties where there is concurrent jurisdiction, such as military bases, it is unreasonable to take this fact, without clearer legislative guidance, to mean that an MP is a person "participating as an advisor, consultant, or otherwise, in performing

a governmental function." HRS § 710-1000(15). A more straightforward reading of this section of the definition indicates that it is designed to apply to contractors and other individuals who have been engaged to perform services for the State, not to federal law enforcement personnel or "public servants," both of which are defined elsewhere in the same statute. Stretching this language to apply to officers of the United States Government is an untenable interpretation of the statute.

The Court's finding with regard to the interpretation of these statutes is buttressed by the rule of lenity, which dictates that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity. Rewis v. United States, 401 U.S. 808, 812 (1971). One purpose of this rule is to "ensure that those subjected to criminal prosecution have adequate notice of the conduct that the law prohibits." Clark v. Martinez, 543 U.S. 371, 397 (2005). When there are two rational readings of a criminal statute, one harsher than the other, courts are to choose the harsher only when the legislature has spoken in clear and definite language. McNally v. United States, 483 U.S. 350, 359-60 (1987).

No such clarity exists here. The Hawai`i legislature created a definition of "public servant" that only applies to officers or employees of State government. For the reasons set forth above, extending this definition to cover federal law enforcement personnel requires substantial linguistic gerrymandering.

Lenity considerations dictate that this Court err on the side of caution and construe the statutes in favor of lenience towards Defendant.  By virtue of this discussion, a military officer of the United States is not a "public servant" for purposes of HRS § 707-716 and, as such, an individual cannot be guilty, via the ACA, of violating this statute for making threats against that same officer.  Accordingly, this Court does not have subject matter jurisdiction over Count 3.

Based on the foregoing and in the interests of due process, this Court hereby GRANTS Defendant's Motion to Dismiss and hereby DISMISSES Defendant's conviction on Count 3.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss Count 3.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 13, 2008.



_____
David Alan Ezra
United States District Judge

United States v. Rex T. Harrison, Cr. No. 07-00384 DAE; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT 3